UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Sunny M. Hawkins, | : | Case No. 5:08Cv0568 |
| | : | |
| Plaintiff | : | Judge Dan A. Polster |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Defendant | : | |

In this action plaintiff seeks judicial review of the defendant's final determination denying her applications for childhood disability benefits (CDB), 42 U.S.C. §402(d) and supplemental security income, 42 U.S.C. §1383(c)(3) (SSI), those applications having been filed on September 3, 2003.

There are differing time periods applicable to each of those claims.

With regard to the CDB claim the relevant period is from August of 2002, an amended onset date agreed to by her counsel, when the plaintiff was eighteen years old, to October 31, 2004, when she married and would no longer be entitled to such benefits.

With regard to the SSI claim the relevant period is September 3, 2003 forward, such benefits only being recoverable from the date of application.

Upon denial of the plaintiff's claims at the state agency level she requested de novo review by an Administrative Law Judge (ALJ), and it was convened on August 24, 2006. In attendance was a medical expert, Dr. Joseph Steiner. However, very little testimony was taken from either the

plaintiff or the doctor, most of the hearing being devoted to discussion between the ALJ and plaintiff's counsel on procedural matters and the state of the record.  The hearing ended with plaintiff's counsel agreeing to a continuance, and advising the ALJ that he would inform her soon thereafter whether he would request that the plaintiff undergo a consultative psychological evaluation.

A second hearing was convened on January 10, 2007.  In the interim period additional evidence was procured, but no consultative evaluation was performed.  Testifying at that proceeding were the plaintiff, Dr. Steiner and a vocational expert, Mr. Ted Macy.

Dr. Steiner stated that he had been practicing psychology for about thirty years,[1] and that his practice was devoted "half and half" between adult and child psychology.  When asked by the ALJ "what the claimant's severe impairments are" he responded:

> A.  Okay.  There's a long list so bear with me.  Borderline personality disorder is supported by 7F, 5F, 4F and 9F. Borderline intellectual functioning is supported by 5F, 2F and 1E.  Attention deficit hyperactivity disorder is supported by 10F, 9F, 5F, 7F, 6F, 3F and 2F.  Learning disability by 5F.
>
> Q.  I'm sorry, hold on.  Thank you, 5F, okay.
>
> A.  Bipolar personality disorder is supported by 10F, 9F, 6F, 5F, 4F and 2F.  Adjustment disorder with anxiety supported by 4F. Post traumatic stress disorder is supported by 9F, 4F, 3F and 2F. Cognitive disorder not otherwise specified supported by 3F. Polysubstance abuse supported by 10F and 1F.  Oppositional defiant disorder is supported by 1F.  Conduct disorder supported by 1F.  Generalized anxiety disorder supported by 9F and 6F. Panic disorder by 7F.  Social anxiety disorder by 10F. Depressive disorder not otherwise specified by 10F. Dysthymic disorder, which is a mild depression, by 10F.  And impulse control disorder in 10F.

---

[1] Althoug Dr. Steiner's resume reflects that he earned his Ph.D. in 1993 and became a licensed clinical psychologist in 1995, it also reflects that he had been employed at mental health facilities since 1977.

That testimony was followed by:

> Q. Okay. Hold on. I just need to--we'll give that seventeen disorders. And of these disorders that you listed, Dr., now that we have an amendment to her onset date until after she was eighteen years old, are these diagnosis, or, or these impairments still applicable to adult--to an adult?
>
> A. Yes.
>
> Q. Okay. Okay. Does any individual impairment or do a combination of the claimant's impairments meet or equal any of our listed impairments?
>
> A. Yes, Your Honor.
>
> Q. Okay. What would that be?
>
> A. First 12.05, mental retardation.
>
> Q. On what basis--
>
> A. Also--
>
> Q. --12.05 what?
>
> A. --basis of the full scale score of 68.
>
> Q. Okay. 12.05 what? C, A? is that what you're saying?
>
> A. I have to look. C.
>
> Q. Okay. And the--and that's based upon the exhibit--
>
> A. 3F.
>
> Q. --3F. And were you able to find the adaptive functioning deficits with a diagnosis of mental retardation?
>
> A. Somewhat, yes.

Listing 12.05 pertains to "Mental Retardation and Autism." The prefatory portion of the

Listing provides "mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)." Subsection C thereof provides that the required level of severity is met by "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function."

Dr. Steiner then stated that he also believed that by virtue of the plaintiff's bipolar II disorder she satisfied Listing 12.04 as a basis of disability.

The ALJ then entered into what this Court considers to be tantamount to a cross-examination of Dr. Steiner, challenging him to identify adaptive functioning deficits, as is called for by Listing 12.05. He stated that he found evidence of such deficits in the plaintiff's inability to adequately organize her daily life schedule and take care of her things in an orderly fashion." In the course of that line of inquiry she asked Dr. Steiner why Dr. Gary J. Sipps, a clinical psychologist who evaluated the plaintiff in October 2003 upon referral of the state authorities and found the plaintiff had a verbal IQ of 69 and a full scale IQ of 68, "did not come up with the diagnosis of mental retardation." He answered "I can't explain that, except that cognitive disorders of much more general diagnosis and he might have just felt saver saying that. Mental retardation would be more specific, but I don't know why he used that strategy."

When plaintiff's counsel examined Dr. Steiner he called the doctor's attention to a "Medical Opinion Re: Ability to do Work-Related Activities" form completed by Kristin Richardson under date of September 26, 2006. Ms. Richardson was a clinical nurse specialist who participated in the plaintiff's mental health treatment at the Coleman Professional Center along with a treating psychiatrist and other counselors. In completing that form Ms. Richardson assessed the plaintiff's

4

"Mental Abilities and Aptitudes To Do Unskilled Work" at "poor to none," defined as "no useful ability to function in this area," for the following: remember work like procedures, maintain attention for two-hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically bases symptoms; accept supervision and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; and deal with normal work stress. She also checked off that the plaintiff would be absent from work more than three times a month because of her mental impairments.

Counsel asked the doctor "Do you feel based upon the record that the limitations marked on that are consistent with the rest of the record and my client as a whole while she is on medication?" Dr. Steiner's response was:

> A. Parts of it. Not all of it.
>
> Q. Can you explain the parts that you feel are consistent?
>
> A. Such areas as maintaining attention for two hour segments are consistent--it's consistent. Work in coordination with or proximity to others without being unduly distracted is consistent. Complete a normal work day and work week without interruptions from psychologically based symptoms is consistent. Get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes is consistent. Interact appropriately with the general public, maintain socially appropriate behavior. Those are it.

When asked by the ALJ the basis for his opinion that the plaintiff would be unable to get along with co-workers without unduly distracting them or exhibiting extreme behaviors Dr. Steiner stated it was

5

"A long history of conflicts with minimal stress, stressors occurring going way back even to the student who she pushed and broke her arm to other conflicts and irritability throughout and the symptoms of bipolar disorder, especially irritability and manic behavior."

The ALJ then asked the expert witness "Today, what would be your assessment of her global assessment of functioning [GAF]?".  The answer was "probably around 50."  A GAF of 50 connotes "serious symptoms," including "unable to keep a job."  When asked whether he agreed with the assessment that the plaintiff would miss more than three days of work a month Dr. Steiner testified 'I can only say that it's possible, but I don't know that . . . [b]ecause with treatment and medication and instruction, I don't know how much she would improve and stabilize."

When Mr. Macy testified plaintiff's counsel asked him whether there would be jobs available to an individual who would be unable to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  He responded "There would be no jobs."  He also stated that for someone who would miss more than three days of work a month "I don't think there'd be any competitive jobs available."

On January 24, 2007 the ALJ issued her decision finding the plaintiff not disabled, which stands as the defendant's final determination consequent to denial of review by the Appeals Council on February 15, 2008.  The ALJ's "Findings of Fact and Conclusions of Law" were:

> 1. Ms. Hawkins attained age 22 on October 20, 2025 [sic], the day before her 22nd birthday (20 CFR 404.102 and 416.120(c)(4)). She is the child of the wage earner and was presumptively dependent on the wage earner. Ms. Hawkins was unmarried only through October 3, 2004.
>
> 2. Ms. Hawkins has not engaged in substantial gainful activity since August 1, 2002, the alleged onset date (20 CFR 404.1520(b),

    404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. Since August 1, 2002, the alleged onset date of disability, Ms. Hawkins has had the following severe impairments: borderline personality disorder (Exhibit 3F, 4F, 7F, and 10F), borderline intellectual functioning (Exhibit 1E, 2E, 2F, 3F, and 10F), bipolar disorder (Exhibits 2F, 3F, 9F, and 10F), and generalized anxiety disorder (Exhibits 4F, 6F, 9F, and 10F) (20 CFR 404.1529(c0 and 416.920(c)).

4. Since August 1, 2002, Ms. Hawkins has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that, since August 1, 2002, Ms. Hawkins has had the residual functional capacity to perform work with no exertional limitations or physical non-exertional limitations.  She is limited to routine, repetitive tasks with simple instructions.  She can perform low-stress work, meaning no high production or rapid production quotas.  She cannot perform work requiring fact to fact interaction with members of the general public.  She is able to work in tandem with others (i.e. in the same area, room, or proximity), but she can interact with co-workers and supervisors only occasionally.

6. Ms. Hawkins has not past relevant work (20 CFR 404.1565 and 416.965).

7. At all times relevant to this decision, Ms. Hawkins is a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. Ms. Hawkins has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because Ms. Hawkins does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Since August 1, 2002, considering Ms. Hawkins' age, education, work experience, and residual functional capacity, Ms. Hawkins

> has been able to perform jobs that exist in significant numbers in the national economy (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).
>
> 11. Ms. Hawkins has not been under a "disability," as defined in the Social Security Act, since August 1, 2002 (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

On this appeal plaintiff raises three issues, the first and foremost being "Did the ALJ err by not finding that the claimant met or equaled Listing 12.05(C) and/or 12.04?"

This Court's answer to the question thus posed is a resounding "Yes," this Court finding that the ALJ's rationale for rejecting Dr. Steiner's expert opinion that the plaintiff meets Listing 12.05(C) to essentially be that she knows better than Dr. Steiner, and Ms. Richardson as well, and that her reasoning for rejecting that evidence to be insubstantial.

To begin with, one of her reasons for doing so was that no one has diagnosed the plaintiff as being mentally retarded. While it is true that Listing 12.05 carries the general heading "Mental Retardation and Autism" it does not call for a formal diagnosis of mental retardation to have been made to satisfy the Listing. Indeed, as previously noted, it refers to mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the development period (before age 22)," and in Subsection C specifically calls for recognition of disability by proof of "a valid verbal performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." This being so, the absence of a formal diagnosis of mental retardation is not inconsistent with a finding of meeting Listing 12.05(C).

Next, on the subject of deficits in adaptive behavior manifested before age twenty-two, Dr. Steiner was quite clear that he found such deficits in the plaintiff's history.

8

The ALJ, however, stated in this regard:

> The school records show that Ms. Hawkins had academic difficulties and no more than mild deficits in adaptive functioning. The record, viewed as a whole, shows that Ms. Hawkins' [sic] is able to maintain a household and care for her two young children. Ms. Hawkins' [sic] testified that she is rarely alone with her children and that she receives substantial help from her husband and mother. This testimony is not supported by the evidence of record. Furthermore, Ms. Hawkins' [sic] suggested that her mother provides substantial help with her five-year-old son; however, she also testified that her mother is disabled due to "bad knees." I find it unlikely that Ms. Hawkins' disabled mother is running after a toddler, lifting and carrying him, and otherwise caring for his needs. Therefore, I find that the evidence does not show that Ms. Hawkins' borderline intellectual functioning resulted in deficits in adaptive functioning and that she does not meet the criteria of section 12.05C.

This Court finds several flaws in the foregoing, starting with a "mild deficit" is, nevertheless, a deficit, and Listing 12.05 simply calls for evidence of deficits in adaptive behavior without specifying that such deficits must be beyond the mild level.

Next, the record provides no support for the ALJ's statement that the plaintiff is herself able to maintain a household and care for her two young children without assistance, nor does it provide any basis for the ALJ rejecting the uncontradicted testimony of the plaintiff that she is rarely alone with her children and receives substantial help from her husband and mother. The snide reference to the plaintiff's mother being unable to run after, lift or carry a toddler by reason of her bad knees is a pure cheap shot, considering that this was not the type of assistance alluded to by the plaintiff, and that she did not testify that her mother did so.

Along this same line is a later statement that "Ms Hawkins [sic] daily activities suggest that she is capable of work at substantial gainful activity levels. Ms. Hawkins reported that she performs all of the household chores in her home and she cares for her two young children (Exhibit 5E). Ms.

9

Hawkins is able to shop, pay bill [sic], and manage her finances." Nowhere in Exhibit 5E is anything which remotely supports the suggestion that the plaintiff independently cares for her home and children. In fact, it reflects that the plaintiff stated she requires assistance to do so. The statement that she shops, pays bills and manages her finances is made of whole cloth, there being absolutely no evidence to support that statement, and the plaintiff's testimony being completely to the contrary.

The ALJ discounted Ms. Richardson's report on the basis that she did not provide a basis for her findings and merely checked boxes on a form. In fact, the form called for the respondent to check off the boxes, and therein Ms. Richardson identified "Bipolar Disorder, Type II, mixed state" as the diagnosed condition supporting her conclusions.

In addition to substituting her opinion for those of Dr. Steiner and Ms. Richardson the ALJ also did so with regard to Dr. Sipp's assessment of the plaintiff possessing a GAF of 50.

Dr. Sipp's examination of the plaintiff placed her verbal IQ at 69 and her full scale IQ at 68, each of which satisfied Listing 12.05(C), and Dr. Steiner's testimony that her bipolar disorder satisfies the Listing's requisite of an additional mental impairment imposing a significant work-related limitation of function stands unrebutted.

Based upon the foregoing, it is this Court's conclusion that the ALJ's decision is not supported by substantial evidence within the standard of <u>Richardson v. Perales</u>, 402 U.S. 389 (1971), and that the only conclusion one can reach under that standard is that the plaintiff meets the requirements of Listing 12.05(C) for recognition of disability. It is, accordingly, recommended that the defendant's final judgment be reversed, and that judgment be entered in the plaintiff's favor finding that she is entitled to an award of CDB as sought, and that she is entitled to an award of SSI

for such period after September 3, 2003 that she meets the economic criteria applicable thereto.


                                                                                     s/DAVID S. PERELMAN
                                                                                     United States Magistrate Judge


DATE:    August 13, 2009



## OBJECTIONS

       Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).